CHRIST F. WUELLNER v. CRESCENT PLANING MILL COMPANY, Appellant.

Division One, March 7, 1924.

1. **NEGLIGENCE: Safe Place: Delegation of Duty to Foreman: Act of Fellow-Servant.** It is the duty of the master to exercise reasonable care to furnish his servant with reasonably safe appliances

Wuellner v. Crescent Planing Mill Co.

and a reasonably safe place in which to work, and this personal duty he cannot delegate to his foreman, or by such delegation free himself from liability for the negligence of the foreman. So that where plaintiff was directed to ascend a ladder which was resting on a slippery floor, and as he did so the foreman held the ladder, but as the plaintiff began to repair a broken door, which was the work he was directed to do, the foreman released his old and the ladder slipped and plaintiff fell, the negligence of defendant in failing to provide the servant with a safe ladder or a safe floor to rest it upon, which is a question for the court to decide, cannot be excused on the theory that the foreman and plaintiff were fellow-servants, even if such theory were true.

2. ———: Contributory: Unsafe Place: Safe When Assisted by Others. Where the tall ladder had no nails or spikes in its ends to keep it from slipping on the smooth and slippery vibrating floor, and plaintiff was familiar with the unsafe condition of both the floor and ladder, but it was safe enough when it was held by the foreman to keep it from slipping, and plaintiff did not attempt to use it in its unsafe condition, but ascended it only when he thought the foreman was holding it, and it fell only when the foreman released his hold, the question of plaintiff's contributory negligence is not one of law, but for the jury to determine.

3. ———: Assurance of Safety: Instruction. Assurance may be by acts as well as by words. Where the floor was smooth and slippery, and there were no nails or spikes in the ends of the ladder, and the foreman directed plaintiff to ascend the ladder to make some repairs, and as plaintiff did so the foreman was holding the ladder and by doing so made it a safe appliance, the instruction may properly hypothesize plaintiff's right to recover upon such assurances given him by the foreman, although the foreman did not expressly tell him he would hold the ladder.

Headnotes 1 to 3:  Master and Servant:  1, 26 Cyc. 1104, 1098, 1322; 2, 26 Cyc. 1482;  3, 26 Cyc. 1235.

Appeal fom St. Louis City Circuit Court.—*Hon. Wilson A. Taylor,* Judge.

AFFIRMED.

*A. & J. F. Lee* and *James A. Waechter* for appellants.

(1) Defendant's demurrer to the evidence should have been sustained, because (a) The plaintiff failed to make out a case against the defendant, because the evidence totally failed to establish that his injuries resulted from a cause for which defendant was responsible. (b) The plaintiff assumed the risk of any injury to himself under the conditions present, and no liability attached on the part of the defendant. (c) Plaintiff was guilty of contributory negligence as a matter of law, and a recovery should be precluded. (d) The dual capacity doctrine prevails in this State. Hicks v. Packing Co., 184 Mo. App. 672; Haggard v. McGrew, 100 S. W. 1072; McGinnis v. Brick Co., 261 Mo. 287; Lawless v. Gas Light Co., 72 Mo. App. 679; Knorpp v. Wagner, 195 Mo. 637; McDermott v. Railroad, 87 Mo. 288; Descher v. Railroad, 200 Mo. 310; Jones v. Cooperage Co., 134 Mo. App. 324; Schmeizer v. Furniture Co., 134 Mo. App. 500; Gunn v. Hemphill Lbr. Co., 218 S. W. 978; Bradshaw v. Standard Oil Co., 199 Mo. App. 692. (2) Plaintiff's Instruction 1 (purporting to cover the entire case and direct a verdict) is erroneous in a number of particulars. (a) It assumes contoverted facts; (b) It is confusing and misleading; (c) It is not warranted by the evidence; (d) It is broader than the pleadings and the proof; (e) It purports to cover the whole case, and has omitted necessary elements requisite to the right of plaintiff to recover; (f) Its errors were not and could not be cured by any other instruction given in the case. Gunn v. Hemphill Lumber Co., 218 S. W. 978; Parker v. Drake, 220 S. W. 1000; Stumpf v. United Railways Co., 227 S. W. 855; Yarde v. Hines, 238 S. W. 153; Spaulding v. Lumber Co., 183 Mo. App. 648; James v. Railway, 107 Mo. 484; Krehmeyer v. Transit Co., 220 Mo. 139; Small v. Ice Co., 179 Mo. App. 464; Haas v. Car & Foundry Co., 176 Mo. App. 314; Burrows v. Likes, 180 Mo. App. 447; Degonia v. Railroad, 224 Mo. 564; Riley v. City of Independence, 257 Mo. 671; Sparkman v. Wabash Railroad Co., 191 Mo. App. 478; Rutledge v. Swinney, 170 Mo App.

251, 264; Goranson v. Manufacturing Co., 186 Mo. 307; Dority v. Railroad, 188 Mo. App. 365, 374; State ex rel. Coal Co. v. Ellison, 270 Mo. 645; State ex rel. Long v. Ellison, 272 Mo. 571; Ganey v. Kansas City, 259 Mo. 654, 663; Wease v. Tool Co., 178 Mo. App. 719; Rouse v. Fire & Marine Ins. Co., 203 Mo. App. 603; Hall v. Coal & Coke Co., 260 Mo. 351; Walker v. White, 192 Mo. App. 13, 18. (3) The verdict is excessive. Varley v. Columbia Taxicab Co., 240 S. W. 218; Yost v. Railroad, 245 Mo. 219; Johnson v. Coal Co., 205 S. W. 615; Hurst v. Railroad, 219 S. W. 566; Hollenback v. Railroad, 141 Mo. 97; Brady v. Railroad, 206 Mo. 509.

*Edward W. Foristel* and *O. J. Mudd* for respondent.

(1) The evidence by plaintiff (aided somewhat by defendant's evidence) made a prima-facie case, entitling plaintiff to go to the jury, and called for the overruling of the demurrer to the evidence. Sweet v. General Electric Co., 165 App. Div. (N. Y.) 935; Whitworth v. Shurk, 197 Mo. App. 404; Blundell v. Manufacturing Co., 189 Mo. 552; Hildman v. Manufacturing Co., 249 S. W. 99. (2) The ladder in question was produced in court, exhibited to the jury and set up before it, as an exhibit and a demonstration of the manner of its position when plaintiff ascended it. This was demonstrative or sight evidence on which the court and jury had a right to make an inference of negligence on the part of the defendant. But that evidence is not brought here on the record, and for that reason, too, this court should not adjudge the evidence insufficient to carry the case to the jury. Higgins v. Pulley Co., 240 S. W. 256; Huss v. Bakery Co., 210 Mo. 44, 50; Blankenship v. Paint & Glass Co., 154 Mo. App. 483, 490; Tatum v. Laundry Co., 201 Mo. App. 100. (3) If the defendant was negligent on any ground laid in the petition and danger and risk supervened on that negligence, such risk and danger was not assumed by the

plaintiff. Williams v. Pryor, 272 Mo. 613, 621; Williamson v. Light & Power Co., 281 Mo. 544. (4) Even if plaintiff was acquainted with the conditions under which he ascended the ladder and went to work upon it, and knew that there was danger because of those conditions, yet, unless his usage of the ladder was so glaringly threatening and dangerous that no prudent person would attempt it, plaintiff was not guilty of contributory negligence as a matter of law. Albrecht v. Belting Co., 252 S. W. 43; Williamson v. Light & Power Co., 219 S. W. 902; Burkhard v. Rope Co., 217 Mo. 466, 480; Kaemmerer v. Wells, 252 S. W. 732; Jewell v. Bolt & Nut Co., 231 Mo. 176, 199; Drycz v. Packing Co., 194 S. W. 765, (5) But as the master was present in the person of its foreman and directed plaintiff to use the ladder, as he did (and this is clearly proven), this was equivalent to an assurance of safety, and plaintiff had the right under such circumstances to defer somewhat to the judgment of Bohle in going upon the ladder and was, therefore, in obeying the immediate and direct commands of the master not guilty of contributory negligence as a matter of law. Bloomfield v. Construction Co., 118 Mo. App. 254, 259; Smith v. Kansas City, 125 Mo. App. 150, 157; Herdler v. Stove and Range Co., 136 Mo. 3, 17; Erwin v. Telephone Co., 173 Mo. App. 508; Buckner v. Horse and Mule Co., 221 Mo. 700, 709; Whitworth v. Shurk, 197 Mo. App. 404, 413; Gilbert v. Hilliard, 222 S. W. 1029. (6) Instruction 1 given on behalf of plaintiff is not reversible error in that it submits to the jury the assurance of the foreman with respect to holding the ladder, although such assurance be not supported by evidence. Because without this (the predicate of the assurance) the instruction required the jury to find other facts sufficient to create a liability for culpable negligence. Wolff v. Payne, 241 S. W. 919; Callicote v. Railway Co., 274 Mo. 689; Gaty v. Sack, 19 Mo. App. 470, 477; Wright v. McPike, 70 Mo. 175, 180; Drummond Investment Co. v. Trust Co., 178 S. W. 482; Foster v. Davis, 252 S. W.

Wuellner v. Crescent Planing Mill Co.

436; Doerr v. Fire Ins. Co., 253 S. W. 39; Milling Co. v. Fire Ins. Co., 219 S. W. 671; Grantman v. Oil Co., 224 S. W. 1014.

SMALL, C.—Plaintiff was seriously injured by reason of a ladder slipping and falling with him while he was working for defendant in its planing mill in the city of St. Louis. He obtained a verdict for $8000, from which defendant duly appealed.

Plaintiff's evidence tends to show: That the ladder slipped from under him, while he was standing thereon repairing some sliding doors, because the ends of the ladder resting on the floor were smooth and had no spikes or nails in them, or they were worn smooth, and the floor was smooth and slippery and vibrated somewhat from the operation of the machinery. That this condition of the ladder and the floor had existed for several years, and was known to the plaintiff and to the defendant's foreman, who had ordered the plaintiff to procure the ladder and assist in repairing the doors. That the foreman held the ladder at the bottom to keep it from slipping, when the plaintiff went up the ladder, and for a few minutes after he had ascended and was endeavoring to replace one of the small wheels at the top of the doors, but that he released his hold on the ladder, while the plaintiff was so doing, and left it without anything to prevent it from slipping and falling, and that very shortly thereafter the ladder fell with the plaintiff, and he was injured.

Plaintiff, among other things, testified: "Mr. Bohle was my foreman. He is manager and boss. He has got the control. When they (the doors) were knocked off, he came down to the main bench and said: 'Take the ladder and go over there. I will get the boy down.' So we got the job finished and got the door shut again. I brought the ladder the same time he went up there and got help. After I got the ladder, Bohle told me to go and fix that. He had an iron bar in his hand standing alongside there, and had the boy, and the boy held the

door so the door didn't slip down. I set the ladder down there where I had to use it. I set it down good. The ladder was about eleven feet long. The bottom of the ladder was about three feet from the wall. The foreman was standing alongside of me with his left hand on the ladder when he told me to go up there. I took a hammer and a wheel and went up about seven steps, that was high enough to get there. When I had my hands there, trying to get the wheel in there, then the ladder started to slip. I tried to catch myself, but I couldn't hold on on account of there being nothing but the wall, and I held myself on the ladder to save myself. It slipped all the way down.'' And plaintiff fell to the floor and sustained a broken leg and other severe injuries.

On cross-examination, plaintiff stated: That he had worked continuously at this plant for twenty years. Bohle had been his foreman four or five years. Two years before the injury, a new yellow-pine floor had been put down. He worked almost every day on that floor; no change in it these two years. He helped put in the floor. It was planed—dressed on both sides. There were two sliding doors; they had been knocked down by some laborers striking them with a truck. He was working about seventy-five feet away from the doors. Bohle came over and told him both doors had been knocked down. The foreman said he would go upstairs and get the boy down. Plaintiff went and got the ladder. He used that same ladder for years. Never had any trouble with it before. Used it sometimes twice a day and sometimes six times. Everybody around the plant used this ladder. So far as plaintiff knew, no one ever had any trouble with it. He himself got the ladder and carried it to where the doors were. He carried it about fifty feet. Bohle went upstairs to get a boy, Shulter, to help. Plaintiff had to wait until Bohle came down to raise the doors up; he could not do it by himself. He waited until Bohle and the boy came to help move the doors out of the way. The three of them put the doors back in place. He him-

self placed the ladder. Bohle was standing alongside of him, and he had the ladder raised up. Bohle was standing alongside and had one hand on the ladder and the bar there to raise the door before he went up. "I didn't see him after that, but he dropped the bar. He had the bar when I started up. Shulter was holding the door and that was all he did. Was on the ladder about five minutes before it fell. Tried to get the wheel in there and used the hammer to twist it a little, and then the ladder slipped. Bohle had hold of the ladder when I went up. Didn't know when he released his hold on the ladder. But he had hold when I went up." That was the last he saw of Bohle until after he fell. Plaintiff's attention was attracted to what he himself was doing. "Q. And did you think it was dangerous to put the ladder there. to go up on it? A. That is the worst place. Q. And you knew it was dangerous to go up on that ladder at that time? A. When you are hurrying you are liable to do anything. Q. You knew it was dangerous to go up on that ladder at that point, and notwithstanding your knowledge of that, you went on it anyway? A. Well, I had the boss under me, you know. I depend on him, otherwise I wouldn't take the job. He gave me the job and sent me up there." Never said anything to Bohle about the floor or the ladder at that point. There was no change in the ladder during all the time he had used it. "Only Mr. Shulter and Mr. Bohle—we three were doing the job."

On re-direct examination, plaintiff continued: "Q. Mr. Waechter, when he was examining you, he asked you whether or not you knew it was dangerous around that floor, and you had testified that the foreman had hold of the ladder when you went up; did you rely on the foreman holding that ladder? A. Yes, sir."

There was other testimony for plaintiff, that the ladder was smooth and round at the ends, and the ends had no spikes or nails in them to keep the ladder from slipping, and that the floor was smooth and slippery;

also that the foreman had his hands on and held the ladder when plaintiff ascended to fix the doors. That the doors were not raised high enough, and that Bohle let go of the ladder after plaintiff had gone up and was working thereon, to get the crowbar, and that shortly afterwards, the ladder fell and injured plaintiff.

The testimony of defendant tended to contradict the plaintiff's evidence on all material points except that Bohle was foreman and plaintiff a servant, as he testified, and was injured while working on the ladder. The foreman testified he did not hold or attempt to hold the ladder at any time, but that when plaintiff ascended and was working on the ladder the foreman was helping to raise the doors to their proper position with a crow bar.

Appellant complains here because the court refused its demurrer to the evidence, gave Instruction One for plaintiff, and refused Instructions H and L asked by defendant. In appellant's brief, it also attacks the verdict as excessive, but on the oral argument this point was abandoned.

I. Appellant contends that its demurred to the evidence should have been given, because the foreman, Bohle, was acting as a fellow-servant of the plaintiff in releasing the ladder, and if he negligently did so his negligence was that of a fellow-servant, for which defendant was not liable.

Negligence of Master: Delegation: Act of Fellow-Servant.

We cannot agree to this contention.

It is the duty of the master to exercise reasonable care to furnish the servant with reasonably safe appliances and with a reasonably safe place to work. This duty is a personal duty which he cannot delegate to a foreman or vice-principal, and thus free himself from liability for the negligence of the foreman or vice-principal. [Combs v. Const. Co., 205 Mo. 367; Koerner v. St. Louis Car Co., 209 Mo. 141; Hollweg v. Tel. Co., 195 Mo. 149; Miller v. Ry. Co., 109 Mo. 350; Dayharsh v.

Ry. Co., 103 Mo. 570; Radtke v. Basket & Box Co., 229 Mo. 1.]

It is true that, if the negligent act of the foreman or vice-principal which injures the servant was not committed in performing some duty the master owed to the servant, but in doing an act of fellow-service, the master would not be liable. In other words, the doctrine of dual capacity prevails in this State. [Fogarty v. Transfer Co., 180 Mo. 490; Radtke v. Basket & Box Co., 229 Mo. 1. c. 23; McIntyre v. Tebbetts, 257 Mo. 117.]

But, whether or not a given act done by the foreman was in discharge of a duty owed by the master to the servant, is a question for the court to decide. [Radtke v. Basket & Box Co., 229 Mo. 1. c. 24-5.]

In the case before us, the testimony of both parties showed that Bohle was the foreman for the defendant and had control and directions over the plaintiff in doing the work in which he was injured. It is for the court to determine, therefore, whether the act of Bohle in negligently releasing his hold on the ladder, which plaintiff had ascended and on which he was working at the direction of Bohle, as plaintiff's evidence tended to show, was negligence in performing a duty the defendant owed the plaintiff as master. We hold, that it was, because releasing his hold on the ladder rendered the ladder or appliance and place of work, which defendant furnished the plaintiff, unsafe, whereas the master was bound to furnish him a reasonably safe place to work and a reasonably safe appliance to work with, and could not delegate that duty to a foreman and thereby release himself from liability for the foreman's negligence. Consequently, the plaintiff had a case for the jury and defendant's demurrer to the evidence was properly overruled.

II. Nor was plaintiff guilty of contributory negligence, as a matter of law. While the slippery ladder was unsafe standing on the slippery and vibrating floor with which plaintiff was familiar, yet it was safe enough with the fore-

**Contributory Negligence.**

man holding it to keep it from slipping. Plaintiff did not undertake to use it in its unsafe condition, but only ascended and worked on it while he thought the foreman was holding it, so that it would not slip and injure him. At least, that was a question for the jury. We rule this point against appellant.

III.   Was there error in plaintiff's instruction numbered one?   We think not.

The paragraphs complained of are as follows: . . . "And if you further find and believe from the evidence that the feet of said ladder were rounded and were not equipped with sufficiently strong and sharp spikes so that the same could be firmly em-

Assurance of Safety.

bedded in said flooring to prevent said ladder from slipping upon the said floor; that the flooring at and about said place was smooth and slippery; that the operation of said machines and saws caused the said floor near, around and about said sliding doors to shake and vibrate; and that the defendant's foreman placed his hand on said ladder as plaintiff was getting up on the same and assured plaintiff that said foreman would hold said ladder and would safeguard plaintiff and said ladder while plaintiff was working thereon to keep the same from falling, and that the plaintiff relied thereon, but that said foreman removed his hand without the knowledge of plaintiff and failed to safeguard plaintiff and said ladder; . . . and if you further believe and find from the evidence that the defendant knew, or by the exercise of ordinary care would have known, that in furnishing plaintiff said ladder for use on said floor in said establishment at said time and place it was likely to slip and fall upon said floor while plaintiff was standing on said ladder, and that he was likely to be injured thereby; and if you further find and believe from the evidence that in assuring plaintiff defendant's foreman would hold and safeguard plaintiff and said ladder, and in failing to do so, if you find there were such assurance and failure, and that in fur-

nishing plaintiff said ladder for use in said condition on said floor at said time and place, if you find that said conditions did exist and said defendant did so furnish said ladder and floor, the defendant failed to exercise ordinary care to furnish plaintiff with a reasonably safe place in which to work and a reasonably safe ladder with which to work under the circumstances in evidence, and that as a direct result thereof said ladder slipped upon the floor while plaintiff was upon said ladder and that plaintiff was thrown to the floor and was injured, as was mentioned in the evidence, and that at all said times plaintiff was using ordinary care for his own safety, then your verdict must be in favor of the plaintiff and against the defendant.''

It is true, that the foreman did not say in words to the plaintiff: ''I will hold this ladder and keep it from slipping while you are on it,'' or use any express words of assurance of safety. But this was not necessary. ''Actions speak louder than words,'' is a maxim. What greater assurance of safety, while on the ladder, could the plaintiff have, than for the foreman to stand at the bottom and hold the ladder, which he had ordered the plaintiff to ascend and work upon? What other purpose could the foreman have had in so doing except to assure the plaintiff of his safety? The plaintiff's evidence tended to show that the ends of the ladder were smooth and slippery and that it stood on an angle on a smooth and slippery and vibrating floor, and we think that the acts and conduct of the foreman in holding the ladder, while the plaintiff ascended and was working thereon under his directions, as he did, according to plaintiff's evidence, were sufficient to submit to the jury whether the foreman did not thus give the plaintiff assurance of safety and that he would hold the ladder all the time plaintiff was working thereon. The instruction does not require the jury to find that the foreman *told* plaintiff he would hold the ladder, but that he *assured* him he would do so, which assurance, we hold, he could give without words, by his acts and conduct, as shown by plaintiff's

303 Mo. Sup.—4.

evidence. The instruction must be read with reference to the evidence, and when so read, there. being no words of assurance used by the foreman, the instruction must be taken to refer to the acts of the foreman under·the circumstances shown in evidence. We rule this· point against appellant.

IV. Instruction H asked by defendant was properly refused because it told the jury there was no evidence that defendant assured plaintiff it would protect him and the ladder from falling.

<div style="float:left">Erroneous Instructions.</div>

Instruction L asked by defendant was properly refused because it told the jury that if plaintiff's injury was caused solely by Bohle's releasing his hold on the ladder plaintiff could not recóver. The improper character of both these instructions follows from what has been said in the preceding paragraphs.

Let the judgment be affirmed. It is so ordered. *Lindsay, C.,* concurs.

PER CURIAM:—The foregoing opinion of SMALL, C., is adopted as the decision of the court. All of the judges concur.