CRAWLEY, Judge.
In April 1992, James Thompson and Toney Bentley, Anniston Fire Department firefighters, responded to a fire call made by FMC Corporation. The fire at FMC’s facility was caused by the ignition of a flammable fluid by welding sparks. The building in which the fire started housed fluid storage tanks filled with EDM fluid, which is also known as Norpar 15. In addition, other chemicals and solvents were stored in different areas of the building. According to the firefighters on the scene, the fire produced a dark black smoke and was extremely hot.
*1271 Each of the initial group of firefighters on the scene of the fire wore all protective gear required by the Department’s regulations, including a self-contained breathing apparatus (“SCBA”). An SCBA contains a face mask similar to that used in scuba gear; it is attached to a compressed air cylinder that.is worn on the firefighter’s back. As the fire continued to bum, the firefighters depleted the supply of air cylinders. The Department apparently has a limited supply of the cylinders available for use. Although they can be recharged with air, the process is time-consuming and cannot be done at the site of the fire. As a result, the firefighters soon had to fight the fire without using an SCBA; in doing so, they were exposed to the smoke.
Thompson and Bentley, while fighting the fire, were both exposed to the smoke. Bentley collapsed at the scene, apparently from exposure to excessive heat, and was transported to a hospital. Thompson was among the last of the firefighters to leave the scene, because he and others fought to prevent the fire from spreading further. Both Thompson and Bentley began complaining of severe headaches in the days following the fire.
Thompson and Bentley sued FMC, Phillip D. Snider, and fictitiously named parties, alleging that negligent or wanton actions on their part had caused the fire in which the firefighters were injured, that they failed to warn the firefighters of the toxic nature of the chemicals stored in the burning building, and that the failure to warn of the toxic chemicals proximately caused the firefighters to be exposed to toxic fumes, and, as a result, to suffer headaches, dizziness, nausea, and memory loss. FMC and Snider filed a joint motion for summary judgment, in which they urged the trial court to adopt the “firefighter’s rule.” The firefighter’s rule, simply stated, “precludes fire fighters from recovering damages for injuries arising out of risks peculiar to their employment.” Carson v. Headrick, 900 S.W.2d 685, 691 (Tenn.1995). The bases for the firefighter’s rule are varied and include the distinction between licensees and invitees in premises liability law, the assumption of the risk doctrine, and public policy. Ami C. Dwyer, Note, 24 U. Balt. L.Rev. 229, 231-38 (1994). The trial court, after concluding that the firefighter’s rule should, apply to this case, entered a summary judgment in favor of FMC and Snider. Thompson and Bentley appealed to the Alabama Supreme Court, which transferred the case to this court pursuant to Ala.Code 1975, § 12-2-7(6). We affirm.
Alabama has not yet' adopted the firefighter’s rule. Although many other states have adopted the rule, which is more than 100 years old, a few states have recently abrogated the rule, including Florida. See Dwyer, supra, at 235 n. 52; and David L. Strauss, Where There’s Smoke There’s the Firefighter’s Rule: Containing the Conflagration After One Hundred Years, 1992 Wis. L. Rev. 2031 (1992). After reviewing the evidence submitted in support of and in opposition to FMC and Snider’s motion for summary judgment, we conclude that we need not decide whether this state should adopt the firefighter’s rule.
Our standard of review in eases involving summary judgments is de novo; we apply the same standard as applied in the trial court. A motion for summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment “must make a pri-ma facie showing that ... no genuine issues of material fact [exist] and that [it] is entitled to [a] judgment as a matter of law.” Lee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala.1992). Once the movant has met this burden, “the burden then shifts to the non-movant to rebut the movant’s prima facie showing by ‘substantial evidence.’ ” Id. “Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). See West, 547 So.2d at 871 (Ala.1989), and Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794 (Ala.1989), for further discussion of the application of the summary judgment standard.
To establish negligence, a plaintiff must prove that the defendant owes the *1272 plaintiff a duty, that the defendant breached that duty, and that the breach proximately caused the plaintiff to be injured or damaged. Martin v. Arnold, 643 So.2d 564, 567 (Ala.1994). “To establish wantonness, the plaintiff must prove that the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty ... that ... proximately cause[d] the injury of which the plaintiff complains.” Martin, 643 So.2d at 567. FMC and Snider met their burden of making a prima facie showing that they did not act negligently or wantonly in such a manner as to cause the plaintiffs’ injuries. Therefore, to defeat the motion for summary judgment, Thompson and Bentley were required to submit substantial evidence of each of the above-stated elements of both negligence and wantonness. See Wilma Corp. v. Fleming Foods of Alabama, Inc., 613 So.2d 359, 364 (Ala.1993). Simply stated, on either claim Thompson and Bentley had to submit evidence (1) that FMC and Snider breached a duty to warn them of the toxic chemicals stored in the budding and (2) that the breach proximately caused their injuries; further, on their wantonness claim, they had to submit evidence (3) that FMC and Snider, recklessly and with no regard for the consequences, intentionally failed to warn them of the toxic chemicals.
Although a decision concerning whether the firefighter’s rule applies to this case would be useful in determining whether FMC and Snider had a duty to warn the firefighters of the toxic chemicals housed in the burning building,[1] we can decide this case without adopting the firefighter’s rule. If we assume, without deciding, that FMC and Snider had a duty to warn in this case, then the summary judgment was still proper. Thompson and Bentley failed to present substantial evidence indicating that FMC and Snider breached the duty to warn.
The affidavit of Ronnie L. Prowell, safety director for FMC, was submitted in support of FMC and Snider’s motion for summary judgment. Prowell testified that he met with a firefighter on the day of the fire. He testified that he spoke with a person he assumed was the fire chief and informed him of the chemicals housed within the burning building. According to Prowell, the firefighter requested the “Material Safety Data Sheet” (“MSDS”) for only one chemical, Nor-par 15. Prowell testified that, after he retrieved the MSDS requested, he took it directly to the firefighter. He testified that he remained on the scene until the fire was extinguished and that he was asked for no other MSDS material and was asked no further questions. This affidavit plainly indicates that FMC and Snider satisfied their duty to warn the firefighters of any dangerous, toxic chemicals housed in the burning building.
In opposition to the summary judgment motion, Thompson and Bentley filed the affidavits of Fire Chief Lewis LeFoy; Assistant Fire Chief James T. Bentley; and Max Cantrell, the fire department supervisor on the day of the fire. LeFoy and Cantrell both testified that they “had no recollection of discussing the fire, nor the chemicals which were burning, with the plant safety director on the date of the fire.” They also testified that they had no recollection or knowledge of being provided any MSDS materials on the day of the fire. This testimony does not tend to prove that LeFoy and Cantrell were not given information about the fire. In fact, the testimony tends to prove only that LeFoy and Cantrell do not remember whether they were informed of the toxic chemicals or whether they were supplied any other information. See Ex parte Coleman, 705 So.2d 392 (Ala.1997) (holding that testimony that the landlord did not remember who installed his tenant’s air conditioner did not support the allegation that the air conditioner had been installed by a “nonelectrician”).
James Bentley’s affidavit states that, when he met with LeFoy, LeFoy had not been provided with any MSDS materials and that, had LeFoy been provided with such materials, LeFoy would have provided the information to Bentley before allowing him to take a *1273 crew into the building. That affidavit is not substantial evidence indicating that LeFoy was not provided the MSDS materials. These affidavits are insufficient to rebut the testimony of Prowell, who testified that he spoke with a firefighter on the day of the fire, warned him of the chemicals stored in the building, and provided him with a requested copy of the MSDS for Norpar 15. The failure of three particular firefighters to recall having a discussion with Prowell does not constitute substantial evidence indicating that no discussion ever occurred between Prowell and a firefighter on the day of the fire.
Without evidence that FMC and Snider breached their duty to warn the firefighters of the presence of toxic chemicals, Thompson and Bentley’s claims of negligence and wantonness must fail. Although the trial court used reasoning different than the reasoning this court has used, we can affirm the judgment of a trial court when it reaches a correct result for a wrong reason. MacLean v. Moon, 567 So.2d 349, 350 (Ala.Civ.App.1990). Therefore, the summary judgment in favor of FMC and Snider is affirmed.
AFFIRMED.
THOMPSON, J., concurs.
ROBERTSON, P.J., concurs in the result.
YATES and MONROE, JJ., dissent.

. If, for example, we adopted the firefighter’s rule on the basis of the distinction between licensees and invitees in this state’s premises liability law, then arguably, FMC might not have had a duty to warn the firefighters at all.