[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-14013
Non-Argument Calendar
_____

D.C. Docket No. 2:17-cv-01348-ACA

SHIRLEY ANN HARRIS,

Plaintiff-Appellant,

versus

REVERSE MORTGAGE SOLUTIONS INC,
LIBERTY HOME EQUITY SOLUTIONS INC,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(January 22, 2020)

Before BRANCH, GRANT, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Shirley Ann Harris alleges that her deceased husband, Samuel T. Harris, obtained a reverse mortgage on their homestead without her knowledge or consent. She sued the originator of the mortgage, Liberty Home Equity Solutions, Inc., ("Liberty"), and the servicer that foreclosed on her home, Reverse Mortgage Solutions, Inc. ("RMS"), asserting claims of negligence and wantonness under Alabama law. The district court denied Shirley's request to amend its scheduling order and for leave to file a fourth amended complaint. The district court then dismissed the action under Rule 12(b)(6) of the Federal Rules of Civil Procedure, finding Shirley's claims of negligence and wantonness were not cognizable under Alabama law. We affirm as to both rulings.

## I

### A

We draw the facts from the third amended (and operative) complaint, assuming as we must that Shirley's allegations are true. *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 n.1 (2002).

In July 2011, Arthur Godfrey, Jr., Liberty's employee and/or agent, originated a reverse mortgage for Samuel. Samuel indicated on the loan application that he was single or otherwise unmarried. Godfrey knew that Samuel was married to Shirley and that Shirley's homestead was the property that would be subject to the reverse mortgage. Liberty received a $7,581.95 origination fee as

part of the transaction. Godfrey "notified one or more employees of Liberty that [Samuel] was married" and that Samuel had stated "he would not go through with the transaction unless they did not require his wife to sign the documents, including the mortgage." As Shirley puts it, "No employee of Liberty did anything to validate the void mortgage after notice." Shirley contends the mortgage is void because Alabama law prescribes that a valid mortgage on a homestead must be signed by both spouses, and she did not sign the mortgage.[1]

Samuel died in November 2015. RMS acquired title to the subject property in March 2016. In May 2016, RMS sent a letter addressed to Samuel purporting to notify him that the property had been foreclosed and that he had ten days to vacate. Shirley vacated the property and did not return.

In her third amended complaint, Shirley presses claims of negligence and wantonness against Liberty and a claim of negligence against RMS. She asserts Liberty owed her a duty not to participate knowingly in a transaction that violated § 6-10-3 and consequently encumbered her homestead without her consent. She

---

[1] The relevant statute, Alabama Code § 6-10-3 (1975), provides:

No mortgage, deed or other conveyance of the homestead by a married person shall be valid without the voluntary signature and assent of the husband or wife, which must be shown by his or her examination before an officer authorized by law to take acknowledgments of deeds, and the certificate of such officer upon, or attached to, such mortgage, deed, or other conveyance, which certificate must be substantially in the form of acknowledgment for individuals prescribed by Section 35-4-29.

further contends RMS owed her a duty to determine if it was foreclosing on a valid mortgage, arguing that any reasonable employee at RMS would have inquired why the mortgage contract did not bear Shirley's signature.

**B**

After limited discovery, Shirley filed her third amended complaint in May 2018.

In June 2018, Shirley requested a status conference to discuss adding Godfrey and Charter Mortgage LLC ("Charter"),[2] the broker of the loan for whom Godfrey was also apparently employed, as defendants. Because Godfrey and Charter were nondiverse parties (at least according to Shirley), adding them would have destroyed diversity. The district court denied Shirley's request.

Shirley then moved to modify the scheduling order and amend her complaint to add Godfrey and Charter as defendants. Shirley's motion stated that, prior to discovery, Shirley did not know that Godfrey was aware she and Samuel were married. Shirley's counsel spoke to Godfrey on the phone, and Godfrey supposedly disclosed information that led counsel to conclude there had been a conspiracy between Godfrey and Samuel.

At oral argument, the district court denied from the bench Shirley's requested leave to amend. The court explained there was no good cause for the

---

[2] Shirley's arguments on appeal focus almost entirely on Godfrey, not Charter.

delay, as Shirley admitted to having all the relevant evidence months before attempting to amend.  The court also concluded, in the alternative, that amendment would be futile "for a number of reasons."

Shortly after, the district court granted the defendants' motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  It found Liberty owed Shirley no duty because § 6-10-3 contains no language creating a duty on the part of a mortgage originator "to comply with the statute and ensure the validity of a mortgage by obtaining all required signatures."[3]  With respect to RMS, the court concluded that Alabama law does not recognize tort actions for negligent or wanton servicing of a mortgage.

This timely appeal followed.

## II

Shirley first asserts the district court should have modified the scheduling order and allowed her to file a fourth amended complaint.

"We review the district court's denial of a motion for leave to amend the complaint for abuse of discretion."  *Covenant Christian Ministries, Inc. v. City of Marietta*, 654 F.3d 1231, 1239 (11th Cir. 2011).  The same standard of review applies to a district court's decision to enforce its pretrial order.  *Sosa v. Airprint*

---

[3] The district court made other findings Shirley does not contest on appeal.  An appellant abandons an argument when she does not press it on appeal.  *Cf. Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008).

5

*Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998).  "Discretion means the district court has a 'range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'"  *Zocaras v. Castro*, 465 F.3d 479, 483 (11th Cir. 2006) (quoting *Betty K Agencies, Ltd. v. M/V Monada*, 432 F.3d 1333, 1337 (11th Cir. 2005)).

A district court's "scheduling order must limit the time to join other parties, amend the pleadings, complete discovery, and file motions."  Fed. R. Civ. P. 16(b)(3)(A).  "A schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  The "good cause standard precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'"  *Sosa*, 133 F.3d at 1418 (quoting Fed. R. Civ. P. 16 advisory committee's note).

We review a refusal to modify a scheduling order before we consider denial of leave to amend.  *See id.* at 1419 ("If we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure.").[4]

---

[4] As relevant here, Rule 15 provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The absence of "good cause" language means Rule 15(a) contains a laxer standard than Rule 16(b).

The district court's scheduling order provided an October 31, 2017, deadline to add or amend parties. Nevertheless, the district court, in its discretion, allowed Shirley to file a third amended complaint in May 2018. In June 2018, when Shirley moved to modify the scheduling order and file a fourth amended complaint, she said discovery revealed that Godfrey had played a more significant role in the reverse mortgage scheme than she had thought. Counsel averred that during a phone call with Godfrey, he "confirmed that Godfrey knew [Samuel] was married" and "that Godfrey was an officer of Liberty."

Yet the supposedly new items in Shirley's motion and fourth amended complaint—especially that Godfrey knew Samuel was married—were already in the third amended complaint. It is apparent from the third amended complaint that Shirley already knew all the relevant facts. There is simply no reason Shirley could not have added Godfrey as a defendant in the third amended complaint.[5] Counsel's remarks that the delay stemmed from his attempt to comply with his Rule 11 obligations are belied by the bold assertions in the third amended complaint regarding Godfrey's misconduct. In her briefing, Shirley all but concedes the point: "Shirley [] alleged in the third and the fourth amendments to

---

[5] Contrary to Shirley's assertion, Godfrey is not an indispensable party under Rule 19 of the Federal Rules of Civil Procedure. "It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." *Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 7 (1990) (per curiam).

the complaint that the activities of Godfrey and [Samuel] in preparing the fraudulent loan application combined and concurred with the negligence of RMS and the negligence and wantonness of Liberty," causing Shirley to lose her home.

Applying the standards of Rule 16(b), we conclude Shirley did not demonstrate good cause for modifying the scheduling order. Thus, we find no abuse of discretion.[6]

### III

We turn to the court's dismissal of her third amended complaint for failure to state a claim. Shirley argues she stated valid causes of action for negligence and wantonness under Alabama law against Liberty and RMS.

We review *de novo* a district court's order granting a motion to dismiss. *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). To prevent dismissal under Rule 12(b)(6), the plaintiff must allege sufficient facts to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[A] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A complaint is subject to dismissal for failure to state a claim if the allegations, taken

---

[6] We do not reach the district court's alternative holding regarding futility of amendment.

8

as true, show the plaintiff is not entitled to relief." *Jones v. Bock*, 549 U.S. 199, 215 (2007).

Under Alabama law, "[t]o establish negligence, the plaintiff must prove: (1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury." *Lemley v. Wilson*, 178 So. 3d 834, 841 (Ala. 2015) (quoting *Martin v. Arnold*¸ 643 So. 2d 564, 567 (Ala. 1994)). "To establish wantonness, the plaintiff must prove that the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty." *Id.* at 841–42 (quoting *Martin*, 643 So. 2d at 567)). "The duty of care is an objective standard determined by what an ordinary careful and prudent person would have done under the same or similar circumstances." *Galaxy Cable, Inc. v. Davis*, 58 So. 3d 93, 99 (Ala. 2010).

The premise of both Shirley's negligence claim and wantoness claim is that Liberty and RMS owed her a duty of care under § 6-10-3 and Article X, § 205 of the Alabama Constitution to ensure compliance with Alabama law and the validity of the mortgage by requiring signatures of both spouses. We disagree.

Section 6-10-3 of the Alabama Code provides that

> No mortgage, deed or other conveyance of the homestead by a married person shall be valid without the voluntary signature and assent of the husband or wife, which must be shown by his or her examination before an officer authorized by law to take

9

acknowledgments of deeds, and the certificate of such officer upon, or attached to, such mortgage, deed, or other conveyance, which certificate must be substantially in the form of acknowledgement for individuals prescribed by Section 35-4-29.

§ 6-10-3 (Ala. Code. 1975). We agree with the district court that this statute merely codifies the principle that a mortgage executed without one of the spouse's voluntary signatures and assent is void. *See Phillips v. Fuller*, 814 So. 2d 885, 888 (Ala. Civ. App. 2001). Contrary to Shirley's contentions, the plain language of the statute does not create a legal duty on the part of the mortgage originator or the mortgage servicer to ensure that the statute is complied with by obtaining the required signatures. *See In re Tennyson*, 611 F.3d 873, 877 (11th Cir. 2010) ("When the plain reading of a statute produces an unambiguous and reasonable [interpretation], we will not look past that plain reading and read into the text of the statute an unstated purpose."); *Chism v. Jefferson Cty.*, 954 So. 2d 1058, 1067 (Ala. 2006) ("We will not read into a statute what the Legislature has not written." (quoting *Elmore Cnty. Comm'n v. Smith*, 786 So. 2d 449, 455 (Ala. 2000))); *Ex parte T.B.*, 698 So. 2d 127, 130 (Ala. 1997) (recognizing that while there may be valid policy arguments for a different result than that demanded by a plain meaning interpretation of a statute, "it is not for the Judiciary to impose its view on the Legislature").

Similarly, Article X, § 205 of the Alabama Constitution of 1901 provides that:

10

Every homestead not exceeding eighty acres, and the dwelling and appurtenances thereon, to be selected by the owner thereof, and not in any city, town, or village, or in lieu thereof, at the option of the owner, any lot in a city, town, or village, with the dwelling and appurtances thereon owned and occupied by any resident of this state, and not exceeding the value of two thousand dollars, shall be exempt from sale on execution or any other process from a court; for any debt contracted since the thirteenth day of July, eighteen hundred and sixty-eight, or after the ratification of this Constitution.  Such exemption, however, shall not extend to any mortgage lawfully obtained, but such mortgage or other alienation of said homestead by the owner thereof, if a married man, shall not be valid without the voluntary signature and assent of the wife to the same.

Although Shirley contends that this constitutional provision also imposed a duty on Liberty and RMS to ensure that the proper signatures were obtained for the mortgage to be valid, Alabama courts have recognized that § 6-10-3 is "essentially a codification of Article X, § 205, of the Alabama Constitution." *Gowens v. Goss*, 561 So. 2d 519, 522 (Ala. 1990).  Thus, like § 6-10-3, the plain language of Article X, § 205 of the Alabama Constitution does not impose any duty of ensuring compliance with the signature requirements on the mortgage originator or the service provider.  Shirley did not assert any other basis for a duty of care, and, therefore, her negligence and wantoness claims against Liberty and RMS could not succeed and were subject to dismissal pursuant to Rule 12(b)(6).  *See Jones*, 549 U.S. at 215; *see also James v. Nationstar Mort'g, LLC*, 92 F. Supp. 3d 1190, 1198 (S.D. Ala. 2015) ("[A] veritable avalanche of recent (and apparently unanimous) federal precedent has found that no cause of action for negligent or wanton

11

servicing of a mortgage account exists under Alabama law."). In other words, whatever serious ethical failures may have occurred in this case, Shirley's claims as alleged are not remediable as torts of negligence or wantoness under Alabama law.

## IV.    Conclusion

Accordingly, for the reasons set forth above, we affirm the district court's denial of Shirley's request to amend its scheduling order and for leave to file a fourth-amended complaint and the dismissal of her complaint for failure to state a claim under Rule 12(b)(6).

**AFFIRMED.**